**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| *JAMES McINNIS, SR., et al.,* | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 08-408-P-H* |
| | ) | <u>*REDACTED VERSION*</u>[1] |
| *STATE OF MAINE, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*AMENDED[2]  RECOMMENDED DECISION ON MOTIONS FOR SUMMARY JUDGMENT AND MEMORANDUM DECISION ON MOTIONS TO AMEND AND TO STRIKE*

In this action alleging illegal search and arrest, brought pursuant to 42 U.S.C. § 1983 and pendent state claims, all defendants[3] have moved for summary judgment on all claims.  The motions are brought by two groups.  The first group, composed of the State of Maine, Michael Cantara, Roy McKinney, William Deetjen, Stephen Borst, Craig Anderson, Philip Alexander, and Scott Rochefort, will be referred to as the state defendants, and the second group, composed of York County, Maurice Ouellette, and Kenneth Hatch, as the county defendants.  Pursuant to Fed. R. Civ. P. 36(b), the state defendants have also moved to amend their response to one of the plaintiffs' requests for admissions.  I recommend that the court grant the defendants' motions for summary judgment, and dismiss the motion to amend as moot.

---

[1] This public version has been redacted, in accordance with my order dated July 30, 2009 (Docket No. 32), to protect the identity of a confidential informant, whose identity is not material to the resolution of the motions for summary judgment.  The redacted passage has been removed from page 28.

[2] The amendment corrects the misspelling of a word in the first paragraph of this recommended decision.

[3] Two named defendants, Martin Magnusson and Lewis Randall, have been dismissed from this action by stipulation.  Docket No. 21.

## I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the outcome of the litigation."  *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209,

213-14 (1st Cir. 2008).

## II. Factual Background

The following undisputed material facts are properly presented in the parties' respective statements of material facts submitted pursuant to Local Rule 56.

The plaintiffs, James McInnis, Dee McInnis (formerly Chaet), and Toni Chaet, are residents of East Parsonsfield, Maine.  Statement of Material Facts by Defendants State of Maine, Michael Cantara, Roy McKinney, William Deetjen, Stephen Borst, Craig Anderson, Philip Alexander and Scott Rochefort ("Maine SMF") (Docket No. 34) ¶ 1; Opposing [Statement of Material Facts] to Defendants State of Maine, Michael Cantara, Roy McKinney, William Deetjen, Stephen Borst, Craig Anderson, Philip Alexander and Scott Rochefort Statement of Material Facts ("Maine Opposing SMF") (Docket No. 62) ¶ 1.  At all relevant times, defendants William Deetjen, Stephen Borst, Craig Anderson, and Scott Rochefort were agents assigned to the Maine Drug Enforcement Agency (MDEA).  *Id.* ¶ 2.  Defendant Philip Alexander was a Maine state trooper.  *Id.* ¶ 3.  Defendant Michael Cantara was commissioner of the Maine Department of Public Safety.  *Id.* ¶ 4.  Defendant Roy McKinney was the director of the Maine Drug Enforcement Agency.  *Id.* ¶ 5.

James McInnis has an extensive criminal record, including violations of supervised release.  *Id.* ¶¶ 7-13.  One of these violations occurred when he tested positive for cocaine, *id.* ¶ 14, and another when he was found to possess over one pound of marijuana with intent to distribute it, *id.* ¶¶ 16-18.

On January 5, 2007, Deetjen received a telephone call from defendant Hatch, who told Deetjen that McInnis and his son Jacob were suspects in a "marijuana ripoff."  *Id.* ¶¶ 20-21.  Hatch also told Deetjen that Probation Officer Randall had told him that McInnis and his son

Jacob were on probation.  *Id*. ¶ 22.  Deetjen knew that McInnis's supervised release on federal

charges had previously been revoked.  *Id*. ¶ 23.  Hatch gave Deetjen the name of the victim of

the "rip-off," told him that approximately 25 pounds of marijuana worth $25,000 had been taken,

told him that McInnis was staying with his girlfriend, Dee Chaet, at an address on North Road,

East Parsonsfield, and that his probation officer was Lew Randall.  *Id*. ¶¶ 24-25.

Deetjen then called Randall at his office.  *Id*. ¶ 26.[4]  Randall told Deetjen that McInnis

was on probation and had not reported to Randall for four to six weeks and that the conditions of

his probation included random searches and seizures.  *Id*. ¶¶ 28-29.  Randall authorized Deetjen

to search McInnis's residence, to detain him for a probation violations, and to transport him to

the York County jail.  *Id*. ¶ 31.  As of that date, Deetjen had worked with Randall for 30 years

and had no reason to question the accuracy of the information that Randall had given him.  *Id*.

¶ 32.  Randall has since died.  *Id*. ¶ 35.  It is a common practice for law enforcement officers to

execute probation holds in response to requests by probation officers.  *Id*. ¶ 36.

An entry dated August 24, 2006, in Randall's James McInnis file states, in relevant part:

> 08/24/2006   12:08/…   CONTACT   MODE:   Phone/PERSON
> CONTACTED: Client/DETAILS: Heard from subject, recently out of
> Federal Custody . . .Subject claims that the State issue would run cc and
> would go away with Fed sentence.  The Fed sentence did run cc with the
> State however the probation for the State lasted a longer period of time.
> Has fines and counselling [sic] requirements on this probation.  He was
> told to report and bring any documentation to us and as far as our records
> indicate he is on probation.

*Id*. ¶ 37.  McInnis recalls speaking with Randall by telephone on August 24, 2006.  *Id*. ¶ 38.

During that conversation, McInnis told Randall that his state probation ran concurrent with this

---

[4] The plaintiffs respond to this and six more paragraphs of the state defendants' statement of material facts with the following: "Qualified.  Mr. McInnis takes the position that conversations not recorded by Mr. Randall did not occur. Mr. McInnis asserts that this is a legitimate inference to be made in his favor on a motion for summary judgment." Maine Opposing SMF ¶¶ 26-29, 31, 34, 72.  It is not.  *See, e.g., CMI Capital Market Investment, LLC v. González-Toro*, 520 F.3d 58, 65-66 (1st Cir. 2008) (party opposing summary judgment not entitled to inference made unreasonable by other uncontested material facts); *see also* fn. 4 *infra*.

federal sentence.   *Id*. ¶ 40.   He remembers Randall telling him to report and to bring documentation and that he was not in any trouble.   *Id*. ¶¶ 41-42.   He never reported to Randall. *Id*. ¶ 43.   He told Randall that he would have his attorney "take care of it," because he knew he was not on probation.   *Id*. ¶ 44.   He was not sure whether his attorney ever contacted Randall and provided him with the documentation Randall had requested.   *Id*. ¶ 45.

From July 2006 to July 2007, defendant Craig L. Anderson was the supervisor of the Alfred office of the MDEA.   *Id*. ¶ 46.   He approved the probation search of the McInnis residence on January 5, 2007.   *Id*. ¶ 47.   He knew that McInnis had a criminal history.   *Id*.   On January 5, 2007, defendant Trooper Philip Alexander received a telephone call from the MDEA indicating that it wanted a uniformed officer present at a residence on Route 160 in East Parsonsfield later that day.   *Id*. ¶ 48.   He met with Anderson, Borst, Rochefort, and Deetjen at a post office in East Parsonsfield.   *Id*. ¶ 49.   The agents advised Alexander that they had received information that McInnis and Dee Chaet lived on North Road, also known as Route 160, and that McInnis had allegedly stolen a large amount of marijuana.   *Id*. ¶ 50.   They told him that McInnis was on probation, Randall was his probation officer and had authorized a probation hold on McInnis, that Dee Chaet had an outstanding active arrest warrant for failing to pay a fine, and that they wanted Alexander to accompany them to the McInnis resident so that, if the residents saw them approaching, they would not think they were about to be "ripped off."   *Id*. ¶¶ 51-53.

Their plan called for Rochefort, Anderson, and Alexander to go to the front of the McInnis mobile home and make contact with the residents while the other agents secured the perimeter.   *Id*. ¶ 54.   If McInnis was present, the agents would execute the probation hold.   *Id*. ¶ 55.   After that, they would search the residence.   *Id*.   Deetjen advised Rochefort that Randall had told him that McInnis's probation included search conditions.   *Id*. ¶ 56.

6

Anderson and the agents arrived at the residence at approximately 6:50 p.m.  *Id.* ¶ 57. The agents wore black nylon jackets with the word "Police" in yellow on both sleeves and the words "State Drug Agent" on the left breast.  *Id.* ¶ 58.  The words "MDEA Police" were written across the back in yellow lettering.  *Id.*

The McInnis residence was a mobile home parked parallel to the roadway.  *Id.* ¶ 59. Alexander and Anderson knocked on the front door.  *Id.* ¶ 60.  Deetjen took a position on the left side of the residence.  *Id.* ¶ 61.  McInnis answered the door, and the agents told him that his probation officer had advised them that he had violated the terms of his probation by failing to report, after which one of them handcuffed McInnis, who did not resist.  *Id.* ¶¶ 62-63.  He told the agents that he was not on probation.  *Id.* ¶ 64.  In Borst and Alexander's experience, it was common for those arrested for violating the terms of their probation to say that they were not on probation.  *Id.* ¶¶ 64-65.

One person stayed on the front porch with McInnis while three agents entered the mobile home, first looking through it to determine whether it was safe to search.  *Id.* ¶¶ 66-68.  McInnis was on the front porch with Alexander when Deetjen entered the residence.  *Id.* ¶ 69.  McInnis told Deetjen that he was not on probation, but Deetjen did not believe him.  *Id.* ¶ 70.  Once inside, Deetjen called Randall at his home.  *Id.* ¶ 71.  Randall again told Deetjen that McInnis was on probation and asked that he be taken to the York County jail.  *Id.* ¶ 72.  Randall said that he would put a detainer on McInnis.  *Id.*  One of the agents arrested plaintiff Dee Chaet (now McInnis) on a warrant for an unpaid traffic violation.  *Id.* ¶ 73.  She told the agents that they had no right to come into her home and that McInnis was not on probation.  Additional Facts ("Plaintiffs' Maine SMF") (included in Maine Opposing SMF beginning at 18) ¶ 16; Response to Plaintiffs' Statement of Additional Facts by Defendants State of Maine, Michael Cantara, Roy

McKinney, William Deetjen, Stephen Borst, Craig Anderson, Philip Alexander, and Scott Rochefort ("Maine Responsive SMF") (Docket No. 68) ¶ 16.

Deetjen went to the master bedroom where Rochefort was already searching.   Maine SMF ¶ 74; Maine Opposing SMF ¶ 74.  A bag of marijuana seeds, a glass marijuana pipe, and a digital scale were found in McInnis's bedroom.  *Id*. ¶ 75.  While the search was going on, Anderson told Borst to transport McInnis to the York County Jail, and Borst did so.  *Id*. ¶ 76. Alexander transported Dee Chaet to the York County Jail.  *Id*. ¶ 77.

After completing the search inside the mobile home, Rochefort inspected a shed located behind it.  *Id*. § 78.  He saw some skirting that was separated from the back side of the mobile home.  *Id*. ¶ 80.  The skirting attracted his attention because it was no longer joined, which suggested to him that there might be something under the  mobile home. *Id*. ¶ 81.  He moved the skirting enough to shine his flashlight under the mobile home. *Id*. ¶ 82.[5]

Portions of an entry dated January 10, 2007, in Randall's James McInnis file state as follows:

> Subject was arrested for FTR last Friday by MDEA agents . . . . Spoke with his Atty on Tuesday and was informed that he might be off probation.  Atty stated they reduced his sentence thus probation time would have started earlier.  There must have been a mixup with both state and federal sentences as to what was concurrent and what wasn't. In any event, Atty supplied PPO with a docket sheet and it does show a reduction in sentence on this docket #.  It confirms that the state date of probation should have been earlier thus the case should have been closed out a few months ago. It could also be interpreted that the motion to reduce his sentence was granted in March of 03 then that's when the probation kicked in, not 260 days earlier.
>
> Nevertheless, when he returned to the community he should have checked in after being told to do so and this mess could have been taken care of sooner.  He was released from custody yesterday and will close out the case today.

---

[5] The plaintiffs purport to deny this paragraph of the Maine defendants' statement of material facts, but the denial does not address this factual statement.  Maine Responsive SMF ¶ 82.

> To summarize, it looks like the State and Defense agreed that the
> probation would run cc with federal conviction as well as another state
> conviction so that when he finally finished his time with the feds his
> probation time would be over as well.  The file never reflected that and
> DOC never received a new J & C from the court.  It should be noted as
> well that a new J & C and docket record was not received[.]

*Id*. ¶ 87.  An entry in the file indicates that Randall discharged McInnis from probation at 10:58

a.m. on January 10, 2007.  *Id*. ¶ 88.

There is no evidence that Deetjen, Borst, Anderson, Rochefort, and Alexander received

instructions from defendants Michael Cantara or Roy McKinney prior to appearing at McInnis's

resident on January 5, 2007.  *Id*. ¶ 89.  There is no evidence that Deetjen, Borst, Anderson,

Rochefort, or Alexander had reputations for conducting illegal arrests in violation of the Fourth

Amendment prior to appearing at McInnis's residence on that date. *Id*. ¶ 90.  The plaintiffs have

adduced no evidence of a causal connection between the events that occurred at the McInnis

residence on January 5, 2007, and the conduct or inaction of either Cantara or McKinney.  *Id*.

¶ 91.

Maine State Probation had failed accurately to interpret the length of probation in at least

one other case by January 5, 2007.  Plaintiffs' Maine SMF ¶ 9; Maine Responsive SMF  ¶ 9.

Randall did not issue any kind of hold to the York County Jail on January 5-8, 2007.  *Id*. ¶ 23.

Defendant Kenneth Hatch, III, has been a law enforcement officer with the Lincoln

County Sheriff's Office since June 1999.  Defendants York County, Maurice Ouellette, and

Kenneth Hatch's Statement of Material Facts ("County SMF") (Docket No. 43) ¶ 1; Opposing

Statements of Material Facts by Plaintiffs James McInnis Sr., Dee McInnis, and Toni Chaet to

Defendants York County, Maurice Ouellette, and Kenneth Hatch's Statement of Material Facts

("County Opposing SMF") (Docket No. 58) ¶ 1.  On January 5, 2007, Hatch was a detective

sergeant. *Id*. ¶ 2. Neither Hatch nor Lincoln County received notice of any claim against Hatch until the complaint in this action was served in 2009. *Id*. ¶ 3. Hatch is McInnis's half brother. *Id*. ¶ 4.

On January 5, 2007, a confidential informant contacted Hatch while he was on duty and told him that McInnis and his son Jacob were planning a burglary or robbery in the Lincoln County area, and that McInnis had previously stolen marijuana from another person in southern Maine. *Id*. ¶¶ 5, 8. He said that this marijuana was currently at McInnis's residence. *Id*. ¶ 5. He also told Hatch that McInnis was on probation and that Randall was his probation officer. *Id*. ¶ 7.

When Hatch received this information he did not have a reason to doubt its accuracy. *Id*. ¶ 11. He was aware that the confidential informant and McInnis had been close for many years. *Id*. ¶ 12. This confidential informant had provided prior information four or five times. *Id*. ¶ 13. Hatch does not recall any of this information being inaccurate. *Id*. ¶ 14. Hatch believed that the information from the confidential informant was consistent with other information he knew about McInnis, including a prior drug conviction and McInnis's addition to drugs. *Id*. ¶ 16.

After receiving the information from his confidential informant, Hatch, while on duty, contacted Randall to inform him of what he had learned, including that McInnis was in possession of drugs and was going to commit another crime. *Id*. ¶ 17.[6] Randall told Hatch that

---

[6] The plaintiff purports to qualify this paragraph of the county defendants' statement of material facts, as follows: "While it is true that Mr. Hatch testified that he called Mr. Randall after receiving the information, Mr. Randall makes no reference to any conversations with law enforcement in his records. To the extent that Mr. Randall did not make note of any specific telephone calls[,] Mr. McInnis takes the position that those calls did not occur and at summary judgment it is a legitimate inference from Mr. Randall's records that the conversations did not take place." County Opposing SMF ¶ 17. In the absence of more evidence – for example, that Randall customarily made note of all telephone conversations had during a work day – it is not a reasonable inference that the conversation did not take place, and the plaintiff may not rely on it. The same is true of the same "qualifications" made to paragraphs 18 and 23. Furthermore, an assertion that a defendant's sworn testimony could be false is based only on speculation,

McInnis was on probation and had not been in to report.  *Id.* ¶ 18.  He told Hatch that he was going to put a hold on McInnis, and that he would discuss it with Deetjen.  *Id.*  Hatch, while on duty, called Deetjen to pass along the information he had received about McInnis.  *Id.* ¶ 20.  He contacted Deetjen because he knew Deetjen was a drug agent in southern Maine, and he had received information that drugs had been stolen in southern Maine and were at the residence of McInnis in southern Maine.  *Id.* ¶ 21.

Immediately after speaking with Hatch, Deetjen called Randall who told him that McInnis was on probation, had not reported in 4-6 weeks, and was subject to random searches and seizures based on conditions of probation.  *Id.* ¶ 23.  Deetjen got permission from Randall to detain McInnis and transport him to the York County Jail for failure to report to probation.  *Id.*  McInnis does not claim that Hatch knew the information was false when he passed it on to Randall and Deetjen.  *Id.* ¶ 24.

Hatch was not present on January 5, 2007, when McInnis was arrested on a probation violation.  *Id.* ¶ 26.  He treated the information he received about McInnis as he would any other criminal because he believed it would violated the oath he took as a law enforcement officer to withhold this information.  *Id.* ¶ 28.[7]

Defendant Borst transported McInnis to the York County Jail on January 5, 2007, a Friday night.  *Id.* ¶¶ 32-33.  Borst filled out a Prisoner Safekeeping Record in the holding area of the jail which stated that Probation and Parole authorized a hold.  *Id.* ¶ 34.  He also filled out a summons for a probation violation.  *Id.* ¶ 35.  He told the officers at the jail that McInnis was

which must be ignored in a court's consideration of a motion for summary judgment, even when it is proffered by the non-moving party.  *Meuser v. Federal Express Corp.*, 564 F.3d 507, 515 (1st Cir. 2009).

[7] The plaintiffs purport to deny this paragraph of the county defendants' statement of material facts, as follows: "Mr. McInnis believes that [M]r. Hatch did not do what was required of him as a police officer."  County Opposing SMF ¶ 28.  This statement of belief does not constitute a denial of the factual statement in paragraph 28 of the county defendants' statement of material facts.

there on a probation hold.  *Id*. ¶ 36.  McInnis was held at the jail until January 9 or 10, 2007, after his attorney spoke to Randall, who approved his release.  *Id*. ¶ 37.[8]

Defendant Ouellette has been sheriff of York County since January 1, 2007.  *Id*. ¶ 38.  He is the final decision-maker at the York County Jail.  *Id*. ¶ 39.  From January 1999 to December 30, 2006, Ouellette was the chief deputy of the York County Sheriff's Office.  *Id*. ¶ 40.  Ouellette never knew of or perceived a problem with any policies, customs, or practices at the jail with regard to the admission of inmates who are brought from other agencies on a probation hold.  *Id*. ¶ 42.  He is not aware of any problems or complaints in that area other than this lawsuit.  *Id*.

York County is a named member of the Maine County Commissioners Association Self-Funded Risk Management Pool, a public self-funded pool established pursuant to 30-A M.R.S.A. ch. 117.  *Id*. ¶¶ 43-44.  Insurance-type coverage is provided pursuant to the Maine County Commissioners Association Self-Funded Risk Management Pool Coverage Document, which specifically excludes coverage for any action seeking tort damages from which the county is immune under the Maine Tort Claims Act, and limits coverage to those areas for which government immunity is expressly waived by the Act.  *Id*. ¶¶ 44-45.  York County has not procured any other liability insurance covering any claim against the county or its employees for which immunity has not otherwise been waived.  *Id*. ¶ 46.

### III.  Discussion

### A.  The State Defendants

#### 1.  *Count I (Defendants Deetjen, Borst, Anderson, Alexander, and Rochefort)*

Count I of the amended complaint alleges under 42 U.S.C. § 1983 that the "defendant officers" deprived McInnis of his right not to be arrested in the absence of reasonable suspicion

---

[8] The plaintiffs deny this paragraph of the county defendants' statement of material facts, but they only dispute whether the release took place on January 9 or January 10.  County Opposing SMF ¶ 37.

to detain him, probable cause to arrest him, or a warrant authorizing his arrest.  Amended Complaint (Docket No. 7) ¶ 47.

The state defendants first argue that McInnis's failure to respond to Randall's request that he report and bring in the paperwork that supported his contention that he was no longer on probation was the legal cause of his arrest and incarceration.  Motion for Summary Judgment by Defendants State of Maine, Michael Cantara, Roy McKinney, William Deetjen, Stephen Borst, Craig Anderson, Philip Alexander, and Scott Rochefort ("Maine Motion") (Docket No. 33) at 6 . The plaintiffs do not respond to this argument.

The court must nonetheless consider the merits of this argument.  *United States v. JMG Excavating & Constr. Co.*, No. 03-134-P-S, 2004 WL 1592134 (D. Me.  July 16, 2004), at *3. The cases cited by the state defendants in support of their position, *Wagenmann v. Adams*, 829 F.2d 196, 212-13 (1st Cir. 1987), and *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50,  (1st Cir. 1997), Maine Motion at 6, which deal with the concepts of superseding independent causation and remoteness precluding proximate causation, are factually distinguishable. There is no sense in which McInnis's alleged failure to report can be characterized as a superseding or an independent cause, nor was Randall's conclusion drawn from that alleged failure unduly remote from the time he asked McInnis to report.  These cases do not persuade me that McInnis's admitted failure to report to Randall or to assure that his lawyer provided Randall with the requested paperwork about his probation, standing alone, necessarily absolves the state defendants from any legal responsibility for McInnis's particular claims.

The state defendants' other argument with respect to Count I is based on qualified immunity.  Maine Motion at 6-12.  Qualified immunity "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C.

§ 1983 for infringing the constitutional rights of private parties." *Borges Colón v. Román-Abreu*, 438 F.3d 1, 18 (1st Cir. 2006) (quoting *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 6 (1st Cir. 2005)).  The defendants' bid for qualified immunity with respect to the plaintiffs' false arrest claim sets in motion what the First Circuit has dubbed "a trifurcated inquiry":

> We ask, first, whether the plaintiff has alleged the violation of a constitutional right.  If so, we then ask whether the contours of the right were sufficiently established at the time of the alleged violation.  Finally, we ask whether an objectively reasonable official would have believed that the action taken or omitted violated that right.

*Acevedo-Garcia v. Monroig*, 351 F.3d 547, 563-64 (1st Cir. 2003) (citation and internal quotation marks omitted).

Qualified immunity is an affirmative defense against damages liability which may be raised by state officials sued in their personal capacity.  *See Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980).  The general rule of qualified immunity, set out in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), is that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known." This rule eliminates from consideration claims of the officials' subjective state of mind, such as bad faith or malicious intention, concentrating on the "objective reasonableness" of the official's conduct.  "On summary judgment on qualified immunity, the threshold question is whether all the uncontested facts and any contested facts looked at in plaintiff's favor show a constitutional violation." *Buchanan v. Maine*, 469 F.3d 158, 168 (1st Cir. 2006).

Here, McInnis alleges a violation of his Fourth Amendment right to be free from unreasonable seizures of his person.  The ultimate question for determining whether his arrest violated the Fourth Amendment is whether there was probable cause to believe that the he had

violated the terms of his probation.[9]   *See Willette v. City of Waterville*, 516 F.Supp.2d 139, 146 (D. Me. 2007).   "Probable cause exists 'when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and the putative arrestee is likely to be one of the perpetrators.'"   *Id.* (quoting *Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004)).   In other words, "[p]robable cause to arrest exists where the facts and circumstances within the police officer's knowledge and of which she had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrestee had committed or was committing an offense."   *Sheehy v. Town of Plymouth*, 191 F.3d 15, 19 (1st Cir. 1999), abrogated on other grounds *Devenpect v. Alford*, 543 U.S. 146 (2004).   The qualified immunity inquiry in this case is whether a prudent police officer with the information known to the defendant officers could reasonably have believed that he had probable cause to arrest McInnis for violation of the terms of his probation.   The court must assess the information available to the officers at the time without indulging in hindsight.   *Barber v. Guay*, 910 F. Supp. 790, 800 (D. Me. 1995).

The plaintiffs' assertion that this court "must decide if there was probable cause to arrest Mr. McInnis and search his home before the Court can consider the officer[s'] reasonable belief," Opposition by Plaintiffs James McInnis Sr., Dee McInnis, and Toni Chaet to State of Maine Defendants William Deetjen, Stephen Borst, Craig Anders[o]n, Philip Alexander, Scott Rochefort, and Kenneth Hatch Motion for Summary Judgment[10] ("State Opposition") (Docket No. 61) at [6], is no longer correct.   In *Maldonado v. Fontanes*, 568 F.3d 263 (1st Cir. 2009), the

---

[9] It is not clear from the summary judgment record which defendant officer actually arrested McInnis.   I therefore treat all of the state officer defendants as if each of them had done so.

[10] The state defendants' motion is also brought by individual defendants Cantara and McKinney and the defendant State of Maine.   Because the court is required to consider the merits of a motion for summary judgment to which no opposition is filed, *Lopez v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir. 1991), I will consider the merits of each claim as it is alleged against these three defendants as well.

First Circuit held that, under *Pearson v. Callahan,* __ U.S. __, 129 S.Ct. 808 (2009), "it is not mandatory that courts follow the two-step analysis sequentially.  Courts have discretion to decide whether, on the facts of a particular case, it is worthwhile to address first whether the facts alleged make out a violation of a constitutional right."  568 F.3d at 270.  I choose to proceed directly to the "reasonable belief" portion of the second step of the mandated analysis of the state defendants' qualified immunity claim, as that is dispositive.

The plaintiffs contend that the state defendants' conduct was unreasonable because no warrant had issued for McInnis's arrest, Maine law requires that probation officers obtain a warrant for the arrest of probationers who fail to report and cannot be located, McInnis told Randall more than once that McInnis was not on probation, and the state defendants waited at least four months after McInnis so informed Randall before arresting him.  State Opposition at [13].

First, no warrant is required to arrest a probationer for violation of the terms of his or her probation.  17-A M.R.S.A. § 1205(1).[11]  Second, the plaintiffs have not submitted any evidence that would allow the drawing of a reasonable inference to the effect that McInnis could not be located.  Their statement of material facts asserts only that Randall "did not file a notice that he could not locate Mr[.] McInnis."  Plaintiffs' Maine SMF ¶ 8.  In fact, the state defendants involved in the arrest knew where McInnis was, and told Randall before he authorized the arrest.  Maine SMF ¶¶ 25, 27; Plaintiffs' Responsive Maine SMF ¶¶ 25, 27.  There was no need for Randall to seek an arrest warrant under the terms of the statute invoked by the plaintiffs.

---

[11]  The statute provides, in relevant part: "If a probation officer has probable cause to believe that a person on probation violated a condition of that person's probation, that officer may arrest the person or cause the person to be arrested for the alleged violation.  If the probation officer can not, with due diligence, locate the person, the officer shall file a written notice of this fact with the court that placed the person on probation.  Upon the filing of that written notice, the court shall issue a warrant for the arrest of that person."  17-A M.R.S.A. § 1205(1).

Third, there is no legal requirement that Randall take McInnis's word that he was no longer on probation.  Nor have the plaintiffs submitted any evidence that would allow the drawing of a reasonable inference that Randall knew or should have known that McInnis was correct.   The fact that the state probation office has failed accurately to interpret the length of probation in one other case before Randall was arrested, Plaintiffs' Maine SMF ¶ 9, does not allow the drawing of a conclusion that no probation officer thereafter could reasonably presume that the information available to him or her concerning the length of any particular probation was correct.  In addition, Deetjen knew that McInnis's supervised release on federal charges had been revoked for violations and had no reason to question the accuracy of the information Randall provided to him.  Maine SMF ¶¶ 23, 32; Plaintiffs' Responsive Maine SMF ¶¶ 23, 32.

Fourth, the time elapsed between McInnis's first statement to Randall that he was not in fact on probation and his arrest was not due to any action or inaction by anyone other than Randall, who is not a party to this action.  There is no reason to impute his inaction to the arresting officer or officers, and the plaintiffs offer no authority in support of this argument.  There is no indication in the summary judgment record that the arresting officers knew that McInnis had told Randall that he was no longer on probation, but, even if they had, it was not unreasonable for them to rely on Randall's assertion that McInnis was in fact still on probation under the circumstances.

To the extent that the "officer defendants" against whom Count I of the amended complaint is asserted include any of the state officers, they are entitled to summary judgment on Count I on the showing made.[12]   No claim is made against the State of Maine in any of the counts of the amended complaint, and it is entitled to summary judgment on that basis.

---

[12] The plaintiffs also contend that McInnis "was held a full two days beyond when it was determined that there was no justification to hold him[,]" and that this is an alternative basis for Count I.  State Opposition at [14].  The

### 2. Count II (Defendants Cantara and McKinney)

Count II of the amended complaint alleges that defendants Cantara and McKinney are liable for the illegal arrest of McInnis because they knew or should have known of the arresting state officers' "reputations for conducting illegal arrest," did not take reasonable steps to supervise and discipline the arresting state officers or to minimize the risk of harm that they presented to the public, and evinced deliberate, reckless, or callous indifference to the constitutional rights of the plaintiffs. Complaint ¶¶ 50-61.

The state defendants accurately point out that the plaintiffs have submitted no evidence to support the assertion that the state officer defendants had reputations for conducting illegal arrests. Maine Motion at 16. The amended complaint goes through the right motions in alleging the elements of supervisory liability under section 1983, but the plaintiffs proffer no evidence to back up the necessary element that each supervisor's action or inaction be affirmatively linked to the constitutionally improper behavior of those supervised, such that "it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Seekamp v. Michaud*, 109 F.3d 802, 808 (1st Cir. 1997) (citation and internal quotation marks omitted). The plaintiffs proffer nothing other than the fact of the arrest as the evidentiary basis for this count, Plaintiffs' Maine SMF ¶¶ 1-31. Indeed, they admit that there is no evidence that the state officer defendants had reputations for conducting illegal arrests of citizens prior to January 5, 2007, nor of a causal connection between the events of that date on North Road, East Parsonsfield, and any conduct or inaction of Cantara or McKinney. Maine SMF ¶¶ 90-91; Plaintiffs' Maine Responsive SMF ¶¶ 90-91.

---

amended complaint alleges that McInnis "was arrested unlawfully until Wednesday January 9, 2007." Amended Complaint ¶ 48. But, the claim that McInnis "was held a full two days beyond when it was determined that there was no justification to hold him" cannot reasonably be read into the allegations in the amended complaint. The state defendants do not respond to it in their reply memorandum. As this issue has thus not been joined, it is not properly before the court at this time. *See generally Lynch v. Dukakis*, 719 F.2d 504, 508-09 (1st Cir. 1983).

Defendants Cantara and McKinney are accordingly entitled to summary judgment on Count II of the amended complaint.

### 3.  Count IV (Defendants Deetjen, Borst, Anderson, Alexander, and Rochefort)[13]

Count IV alleges that the "officer defendants" violated the constitutional rights of all three plaintiffs when they searched the North Road residence on January 5, 2007.  Complaint ¶¶ 71-74.  The state defendants contend that the search was supported by a reasonable suspicion, which is all that is required for a search of the residence of a probationer, and that, in the alternative, they are entitled to qualified immunity from this claim as well.  Maine Motion at 12-15.  The plaintiffs argue that the officers were required to obtain a warrant to search the residence once McInnis and Dee McInnis were in custody.  State Opposition at [10].  But, the only authority cited by the plaintiffs in support of this argument merely repeats the undisputed legal analysis underlying the customary requirement of a search warrant.  Here, the officers reasonably believed, based upon the information that they had been given, that no warrant was required because McInnis was on probation and had violated one or more terms of that probation, including, specifically, that McInnis was in possession of a large amount of stolen marijuana. That was sufficient to justify their search under the Constitution.  *United States v. Knights*, 534 U.S. 112, 121 (2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.").  *See also United States v. Giannetta*, 909 F.2d 571, 576 (1st Cir. 1990) (describing reasonable suspicion in this context).

---

[13] Count III was asserted only against defendant Magnusson, against whom all claims have been dismissed.  Docket No. 21.

Even if this were not the case, the state officer defendants are entitled to qualified immunity on this claim for the same reasons as those discussed in connection with the unlawful arrest claim presented in Count I.   In *Moore v. Vega*, 371 F.3d 110 (2d Cir. 2004), the defendant state officers searched the plaintiff's residence based on mistaken information received from a customarily reliable federal law enforcement agency that an absconded parolee was residing at her house.  *Id*. at 112, 117.  The Second Circuit held that it was not plainly incompetent for the officers to rely on this information as the basis for a warrantless search of the residence, entitling them to qualified immunity.  *Id*. at 115, 117.  That opinion is persuasive authority for the factual situation present here.

Any state defendants against whom Count IV is asserted are entitled to summary judgment on that count.[14]

### 4.  Count V (Defendant McKinney)

Count V of the amended complaint alleges that defendant McKinney bears supervisory liability for the illegal search conducted by the state officer defendants.  Complaint ¶¶ 75-82.  It makes essentially the same substantive claims that were made against McKinney in Count II, and fails for the same reasons.  For the reasons discussed with respect to that count, McKinney is entitled to summary judgment on this count as well.

### 5.  Count VI (Defendants Deetjen, Borst, Anderson, Alexander, and Rochefort)

Count VI of the amended complaint alleges that the state officer defendants, *inter alia*, committed the common law tort of false arrest against McInnis.  Complaint ¶¶ 83-87.  The state

---

[14] Count IV asserts claims on behalf of plaintiffs Dee McInnis and Toni Chaet as well as James McInnis Sr., yet neither woman's claims are mentioned in either side's discussion of this count.  The opinion in *Moore*, an action brought by a resident of the premises searched, other than the parolee, on whose presumed presence the search was based, makes clear that such claims do not survive a finding of reasonable reliance on mistaken information like that which I have found here.

officer defendants contend that this claim against them is barred by the Maine Tort Claims Act. Maine Motion at 15-16.  The plaintiffs do not respond to this argument.

The Maine Tort Claims Act provides that "employees of governmental entities shall be absolutely immune from personal civil liability for . . . [p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused[.]"  14 M.R.S.A. § 8111(1)(C).  A law enforcement officer's action in arresting or seizing an individual from his residence is a discretionary function to which this absolute immunity applies.  *See, e.g., McLain v. Milligan*, 847 F. Supp. 970, 977 (D. Me. 1994) (entering plaintiff's home, executing warrantless arrest, and filing charges against plaintiff required exercise of judgment and hence discretionary functions entitled to absolute immunity); *Creamer v. Sceviour*, 652 A.2d 110, 115 (Me. 1995) (warrantless arrest discretionary function entitled to statutory immunity).

From all that appears in this summary judgment record, the state officer defendants are entitled to summary judgment on Count VI.[15]

### B.  The County Defendants

#### 1.  Count I (Defendants Ouellette and York County)

Count I, alleging an illegal arrest under 42 U.S.C. § 1983, names York County and defendant Ouellette in its caption, but makes no specific allegations against them.  Complaint ¶¶ 46-49.  From all that appears in the record, Ouellette was not directly involved in the arrest of McInnis, nor were any employees of York County.  As the county defendants point out, Defendants York County, Maurice Ouellette and Kenneth Hatch's Motion for Summary Judgment ("York Motion") (Docket No. 42) at 4, a county can be liable under section 1983 only

---

[15] The state defendants argue that punitive damages, sought by the plaintiffs in all counts alleged against them, are not available under the circumstances of this case.  Maine Motion at 18.  Because I recommend the entry of summary judgment in favor of the state defendants on all counts asserted against them, I do not reach this issue.  I do note, however, that, contrary to the demand repeated in Count VI of the amended complaint, punitive damages "pursuant to 42 U.S.C. § 1983," Complaint at 12, are not available in any event on a *state-law* claim.

if the alleged constitutional violation results from an unconstitutional policy, custom, or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

The plaintiffs' opposition spends considerable time discussing the qualified immunity defense, Opposition by Plaintiffs James McInnis Sr., Dee McInnis, and Toni Chaet to Defendants York County, Maurice Ouellette, and Kenneth Hatch's Motion for Summary Judgment ("York Opposition") (Docket No. 59) at 6-10, their only response to this section of the county defendants' motion, but that defense is not asserted by the county or by Ouellette. None of the facts proffered by the plaintiffs with respect to this motion can reasonably be interpreted to refer in any way to a policy, custom, or practice of York County, with one exception. Paragraph 21 of the plaintiffs' own statement of material facts provides:

> Agent Borst went on to explain that the York County Jail will accept a uniform summons and complaint in place of an actual probation hold.

Additional Facts ("Plaintiffs' County SMF") (included in County Opposing SMF beginning at 15) ¶ 21.

The county defendants have moved to strike this paragraph of the plaintiffs' statement of material facts. Defendants York County, Maurice Ouellette and Kenneth Hatch's Reply Statement of Material Facts and Request to Strike ("County Reply SMF") (Docket No. 65) at 5. They assert that the record reference provided in this paragraph does not support it. *Id*. I agree. The plaintiffs cite page 36 of defendant Borst's deposition as the only source for this paragraph. Plaintiffs' County SMF ¶ 21. That page provides, in its entirety, along with a question that appears on page 35:

> Q. Okay. Explain that. Is that the policy that the jail requires you to produce a summons?
>
> A. It's been my experience they like to have something in their hand when you drop a prisoner off because, in addition to having the

22

summons, they should also be getting a probation hold sent to them from the probation officer, which most oftentimes seems to be after hours.

So the person may have – the probation officer has to get to a fax and – or call the State Police Barracks in Gray and have them send it.

Q.  So there is a form that is created when someone is on – placing a probation hold on someone?

A.  When a probation officer is placing the hold on them, yes, there is a mechanism for them to – to notify the jail that so and so is there on a hold.

Q.  Okay.  Are you aware or have you – or do you personally know about any other document that evidences a hold other than the summons you created?

A.  Yes.

Q.  Where is that document?

A.  In my case file.

Q.  Where is your case file?

A.  Here's a copy of it.

Q.  Can I see that document, please.

A.  (Witness complying.)

Deposition of Stephen Borst (Docket No. 37) at 35-36.

Borst does not say here that the York County Jail "will accept a uniform summons and complaint in place of an actual probation hold."  Plaintiffs' County SMF ¶ 21.  In addition, the record establishes that Borst was at the relevant time "an MDEA agent covering York County." County SMF ¶ 32; Plaintiffs' Responsive County SMF ¶ 32.  There is no indication that he was employed by York County, was authorized to testify about the policies of York County, or even had any knowledge about the policies of York County.

The testimony on the cited page establishes only that York County jail personnel "like[d]" to have some document, apparently showing why the individual being "dropped off" is being jailed.  That is far from evidence that the county had a policy of accepting a summons in lieu of a written probation hold.  Even if that were the policy, however, it would have played no role in McInnis's arrest.  As previously noted, if McInnis wishes now to claim that he was kept in jail in violation of his constitutional rights after he was arrested, he has not alleged that claim in the amended complaint, and that issue is not before the court.

The plaintiffs say nothing about any basis for Ouellette's liability on Count I, and none is readily apparent from the summary judgment record.

York County and Ouellette are entitled to summary judgment on Count I.

### 2.  Count VI (Defendants York County and Ouellette)

Count VI alleges that Ouellette and the county committed the tort of false arrest against McInnis.  Specifically, it asserts that unidentified "members of the York County sheriff's office[] intended to confine Mr. McInnis at the York County Jail without authority to do so."  Complaint ¶ 84.  The county defendants contend that both York County and Ouellette are immune from this claim under the terms of the Maine Tort Claims Act.  York Motion at 6-9.  The plaintiffs respond that qualified immunity is not available to these defendants, York Opposition at 17-21, a defense that the county defendants have not asserted.  They do not address at all the statutory defense that the county defendants *have* raised.

Under the Maine Tort Claims Act, Ouellette is entitled to absolute immunity as an employee of a governmental entity[16] for "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused[.]"  14 M.R.S.A. § 8111(1)(C).  A

---

[16] A county is included within the Maine Tort Claims Act's definition of a governmental entity.  14 M.R.S.A. § 8102(2) & (3).

decision to confine an individual in the York County jail is certainly "reasonably encompassed by the duties of the governmental employee in question[.]"  *Id.* § 8111(1).  To the extent that paragraph 84 of the amended complaint may reasonably be construed to be asserted against Ouellette, it alleges only abuse of the discretion to decide who will be imprisoned and who will not.  In addition, the plaintiffs have failed to proffer any factual support for the necessary basis of any argument that Ouellette was not entitled to statutory immunity, such as his knowledge of the fact that McInnis had been jailed, let alone knowledge that he or any county employee lacked authority to do so.  Plaintiffs' County SMF ¶¶ 1-33.

To the extent that any claim is asserted against York County in Count VI,[17] it is entitled to immunity for a different reason.  Generally, a county, as a governmental entity, is immune from suit "on any and all tort claims seeking recovery of damages."  14 M.R.S.A. § 8103(1).  None of the exceptions to this immunity recited in the act is applicable here.  Those exceptions are tort claims arising out of:

1.  ownership, maintenance, or use of vehicles, machinery, and equipment, 14 M.R.S.A. § 8104-A(1);

2.  negligent construction, operation, or maintenance of any public building, 14 M.R.S.A. § 8104-A(2);

3.  discharge of pollutants, 14 M.R.S.A. § 8104-A(3);

4.  road construction, street cleaning, or repair, 14 M.R.S.A. § 8104-A(4); and

5.  areas in which the governmental entity would otherwise be immune but for which it has obtained liability insurance coverage, 14 M.R.S.A. § 8116.

---

[17] This count of the amended complaint fails to allege any basis for liability on the part of the county, and it is therefore entitled to summary judgment on Count VI for that reason as well.

In this case, the plaintiffs do not dispute that the liability insurance that the county has obtained through the Maine County Commissioners Association Self-Funded Risk Management Pool specifically excludes coverage for any cause of action  seeking tort damages for which the county is otherwise immune under the Maine Tort Claims Act.  County SMF ¶¶ 43-46; County Opposing SMF ¶¶ 43-46.  Accordingly, section 8116 does not apply to this case.

The allegations of the amended complaint cannot reasonably be construed to fit within any of the four exceptions specified in section 8104-A.  Accordingly, the county is entitled to summary judgment on Count VI of the amended complaint.

### 3.  Counts VII and VIII (Defendant Hatch)

Count VII of the amended complaint alleges that defendant Hatch committed the state-law tort of malicious prosecution against McInnis.  Count VIII alleges that Hatch defamed McInnis.  At all relevant times, Hatch was employed by the Lincoln County Sheriff's Office and was acting in that capacity.  County SMF ¶¶ 1-2, 5, 7-10, 17, 20-22; County Opposing SMF ¶¶ 1-2, 5, 7-10, 17,[18] 20-22.

The county defendants contend that the state-law tort claims asserted against Hatch must fail because McInnis failed to comply with the notice provisions of the Maine Tort Claims Act.  York Motion at 10-11.  It is undisputed that the notice required by 14 M.R.S.A. § 8107 was not served by the plaintiffs.  County SMF ¶ 3; County Opposing SMF ¶ 3.  Ordinarily, a failure to

---

[18] The plaintiffs purport to qualify their response to this paragraph of the county defendants' statement of material facts as follows: "While it is true that Mr. [H]atch testified that he called Mr. Randall after receiving the information, Mr. Randall makes no reference to any conversations with law enforcement in his records.  To the extent that Mr. Randall did not make note of any specific telephone calls[,] Mr. McInnis takes the position that those calls did not occur and at summary judgment it is a legitimate inference from Mr. Randall's records that the conversations did not take place."  County Opposing SMF ¶ 17.  The county defendants have asked the court to strike this response.  County Reply SMF at 1.  For the reasons previously discussed in connection with the plaintiffs' identical "qualification" of certain paragraphs of the state defendants' statement of material facts, *see* fns. 2 & 4, *supra*, the inference the plaintiffs claim is not "legitimate" or available.  The request to strike is granted.

comply with this requirement bars a subsequent claim.  *Cushman v. Tilton,* 652 A.2d 650, 651 (Me. 1995).

The plaintiffs argue that Hatch was not acting within the scope of his employment at the relevant time or times, thus excusing them from the notice requirement, although they do not cite any authority for the latter proposition.  York Opposition at 10-11, 14-15.  The legal basis for this argument is set out in *Warren v. Nolan*, 526 A.2d 1134, 1135 (Me. 1988) (and cases therein cited), which supports the plaintiffs' position as to the legal standard.

The same is not true of the plaintiffs' attempted application of this standard to the facts properly before this court, however.  Hatch was acting within the scope of his employment by Lincoln County if he was "acting on behalf of a governmental entity in any official capacity" at the relevant time, 14 M.R.S.A. § 8102(1), or if his challenged actions were "reasonably encompassed by the duties" of his job, 14 M.R.S.A. § 8111(1).  "An employee's action falls within the scope of employment if (a) it is of the kind he or she is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master."  *Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 26, 922 A.2d 484, 492 (citation and internal punctuation omitted).

The plaintiffs contend that Hatch was acting beyond the scope of his employment because "he was intervening in a family dispute, he did nothing to corroborate the information he received,[19] and he knew that the information he received was not from an ordinary member of the public[,]" County Opposition at 11; that he was attempting to "turn his family strife into official acts," *id*. at 13; Hatch "was the victim of the crime for which it was asserted that Mr. McInnis was on probation, Mr. Hatch is Mr. McInnis's brother, the source of the information

---

[19] Yet the plaintiffs also assert that "Maine law simply does not make the investigation of probation violations part of the duties authorized for deputy sheriffs."  York Opposition at 14.

was **sealed**, Mr. Hatch did no[t] actually conduct[] an investigation, and Mr. Hatch only wrote a report after it was clear that the information was false[,]" *id*. at 14 (emphasis in original); Hatch's actions "are characterized by family conflict[,]" *id*. at 15; and "Mr. Hatch was a victim of a crime to which Mr. McInnis plead[ed] guilty even though Mr. Hatch denies any ill will[,]" *id*. at 16.

It is not necessary to discuss most of these factual assertions because they are not included in the plaintiffs' proffered evidence and thus not before the court. *Lafortune v. Fiber Materials, Inc.*, No. 03-275-P-H, 2004 WL 2378861 (D. Me. Oct. 25, 2004), at *7 n.5. All of the information on this point that is included in the plaintiffs' additional statement of material facts is the following:

**[REDACTED]**

Plaintiffs' County SMF ¶¶ 32-33 (citations omitted). The only other fact in the summary judgment record that could possibly have any bearing on the factual assertions in the plaintiffs' brief is the following provided by the county defendants in their statement of material facts: "When Hatch and McInnis get together at family events they get along fine and are friendly towards each other." County SMF ¶ 29.[20] This information does not even begin to allow the drawing of the factual inferences necessary to support the conclusory assertions posited by the plaintiffs. For all that appears in the summary judgment record, Hatch's actions at the relevant time were well within the scope of his employment as a deputy sheriff.

Accordingly, on the showing made, Hatch is entitled to summary judgment on Counts VII and VIII of the amended complaint due to the admitted failure of the plaintiffs to serve the notice required by the Maine Tort Claims Act.

---

[20] The plaintiffs' purported qualification of this paragraph of the county defendants' statement of material facts, County Opposing SMF ¶ 29, is not responsive, and the county defendants' request to strike it, County Reply SMF at 6, is granted.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendants' motions for summary judgment (Docket Nos. 33 & 42) be **GRANTED**.  If the motions are granted, the motion to amend (Docket No. 66) will be **MOOT**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of January, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

**Plaintiff**

**JAMES MCINNIS, SR**                    represented by  **ROBERT C. ANDREWS**
                                                            LAW OFFICE OF ROBERT C.
                                                            ANDREWS
                                                            P.O. BOX 17621
                                                            PORTLAND, ME 04112
                                                            879-9850
                                                            Fax: 879-1883
                                                            Email: rcaesq@maine.rr.com

V.

**Defendant**

**STATE OF MAINE**                       represented by  **WILLIAM R. FISHER**

ATTORNEY GENERAL'S OFFICE
6 STATE HOUSE STATION
AUGUSTA, ME 04333-0006
626-8504
Fax: 287-3145
Email: william.r.fisher@maine.gov

**Defendant**

**YORK COUNTY**                    represented by **CASSANDRA S. SHAFFER**
WHEELER & AREY, P.A.
27 TEMPLE STREET
P. O. BOX 376
WATERVILLE, ME 04901
207-873-7771
Email: cshaffer@wheelerlegal.com

**PETER T. MARCHESI**
WHEELER & AREY, P.A.
27 TEMPLE STREET
P. O. BOX 376
WATERVILLE, ME 04901
873-7771
Email: pbear@wheelerlegal.com